IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DEBRA J. ERICKSON and GARY VANDER VORST as Co-Personal Representatives of the Estate of David B. Erickson,<br><br>Plaintiffs,<br><br>vs.<br><br>J.C. BROMAC CORPORATION d/b/a EAGLERIDER and EAGLERIDER, INC.,<br><br>Defendant. | Cause No. CV-12-59-BLG-RFC<br><br>ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANT |

## I. INTRODUCTION

David B. Erickson was killed in a motorcycle accident on June 28, 2010 while participating in a guided tour organized by Defendant J.C. BroMac Corporation ("EagleRider"). Erickson's Estate brings this action to recover an additional $900,000 in Personal Accident Insurance ("PAI Coverage") over the $100,000 that has already been paid. The Estate alleges EagleRider agreed to provide $1,000,000 in PAI Coverage to tour participants in its contract with Altria Consumer Engagement Services ("ALCES"), the Executive Summit host.

1

Pending before the Court are EagleRider's Motion to Dismiss (doc. 14) and the Estate's Motion for Summary Judgment (doc. 17). Since the material facts are not in dispute, the issue is one of contract interpretation that may be decided by the Court as a matter of law. The Estate has moved for summary judgment in its favor, and EagleRider is on notice that the Court might consider its motion to dismiss as one for summary judgment; the Court will treat the motions as cross-motions for summary judgment. For the following reasons, the Court concludes there was no contract for $1,000,000 in PAI Coverage and that Eaglerider is therefore entitled to judgment as a matter of law.

## II.   FACTUAL BACKGROUND[1]

EagleRider contracted with ALCES ("the Agreement") to provide rental motorcycles and guides for guests at ALCES's June 2010 Executive Summit at the Crazy Mountain Ranch in Clyde Park, Montana. Under the heading "INSURANCE," the Agreement provided in relevant part:

---

[1]These facts are compiled from documents attached to the Second Amended Complaint (doc. 13), EagleRider's Brief in Support of Motion to Dismiss (doc. 15), Erickson's Statement of Undisputed Facts (doc. 18) and EagleRider's Statement of Genuine Issues (doc. 29). The Estate supports its Statement of Undisputed Facts with citations to the Second Amended Complaint. Although L.R. 56.1(a)(2) allows a party to cite a "pleading" to support the facts on which it relies to support its motion, citing a complaint without an additional citation to an answer admitting the complaint's allegation would generally be insufficient to establish a fact is undisputed. In this case, however, EagleRider's Statement of Genuine Issues tracks the Statement of Undisputed Facts and expressly identifies the facts in dispute.

EagleRider recommends that you take out adequate travel, health and accident insurance as well as trip cancellation insurance with an EagleRider agent. EagleRider currently offers the following insurances and Damage Waiver Coverage:

*All insurance, coverage and waivers are subject to the express terms and conditions of the rental contract* and do include coverage for injury, personal property, or damage as the result of negligence such as illegal use or use of rental while under the influence of drugs or alcohol …

\*\*\*

| | |
|---|---|
| PAI/PEC – Personal Accident Insurance /Personal Effects Coverage<br>*Accidental death benefit for renter ($1,000,000)* and passenger ($10,000).<br>Accidental medical expense benefit for renter and immediate family traveling with renter up to $1000 of 24 hour accidental medical expenses within one year. Personal effects coverage for up to $525 Contact rental location for a detailed description of coverage. | $3.50 per day |

Ex. A to Sec. Am. Complaint, doc. 13-1, pp. 8-9 (emphasis added). David Erickson was not a party to the Agreement and there is no claim he was aware of the offer of $1 million PAI Coverage.

David and his wife Debra Erickson elected to participate in the guided motorcycle tour offered by EagleRider while they were guests at the Executive Summit. As required by EagleRider, David signed a form titled "Acknowledgments and Assumption of Risk," doc. 15-1, and a form titled "Motorcycle Rental Release of Liability," doc. 15-2. Neither of these forms say

3

anything about insurance.

David and Debra also signed an "Insurance & Damage Waiver Addendum," which EagleRider calls the "Rental Contract." Ex. 2, Sec.Am.Compl., doc. 13-2. This document provides in relevant part:

> EagleRider provides third party legal limits of liability, property damage, and personal injury protection as required by law of the various states to protect the renter and authorized drivers. The foregoing coverage will be excess over any applicable insurance available to any Rentee or any other operator, from any other source, whether primary, excess, secondary or contingent in any way. All insurance, coverage and waivers are subject to the express terms and conditions of the rental contract and do not include coverage for injury, personal property, or damage as a result of negligence such as illegal use of the renter while under the influence of drugs or alcohol …

Doc. 13-2. Under the heading, "OPTIONAL INSURANCE," David Erickson initialed that he accepted the "Personal Accident Insurance/Personal Effects Coverage(PAI/PEC)" for $4.95 per day. With respect to that coverage, the "Insurance & Damage Waiver Addendum" provides: "[b]y initialing, you accept PAI/PEC at the rate shown, and upon terms and conditions of the summary of coverage in the PAI/PEC brochure, a copy of which you acknowledge has been received by you." The PAI/PEC brochure provides a $100,000 accidental death benefit for the insured renter. Doc. 15-3, declared under penalty of perjury to be the brochure referred to in the "Insurance and Damage Waiver Addendum" and made available to David Erickson by doc. 27-1.

4

David was killed in a motorcycle accident on Bridger Canyon Road on July 28, 2010 while participating in the EagleRider motorcycle tour. To date, EagleRider has paid $100,000 in accidental death benefits under the PAI Coverage to the Erickson Estate.

## III. ANALYSIS

### A. STANDARD OF REVIEW

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in favor of that party, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.,* 668 F.3d 1148, 1152 (9th Cir.2012). Since the construction and interpretation of a contract is a question of law to be decided by the court, *Modroo v. Nationwide Mut. Fire Ins. Co,* 191 P.3d 389, 295 (Mont. 2008), and there is no dispute as to the material facts, only an objection as to which facts can be considered under the law, this case is appropriately resolved on summary judgment.

An insurance contract must be examined as a whole, with no deference to any particular clause. *Id*. Words in an insurance contract must be accorded their usual meaning and construed using common sense. *Id.*

5

The Estate's claim for $1 million in coverage is based on the "Insurance" provision of the Agreement between ALCES and EagleRider . Doc. 13-1, pp. 8-9. The "Insurance" provision provides, in relevant part, that "EagleRider currently offers the following insurances and Damage Waiver Coverage …," including, under the heading "Personal Accident Insurance," "Accidental death benefit for renter ($1,000,000) …" According to the Erickson Estate, when David Erickson initialed that he accepted the PAI/PEC Coverage there was a contract for $1,000,000 in accidental death benefits.

Under Montana law, formation of a contract requires identifiable parties capable of contracting, their consent, a lawful object, and a sufficient cause or consideration. Mont. Code Ann. § 28-2-102. The Agreement between ALCES and Eaglerider can only be construed as an offer for $1 million in accidental death coverage, along with "VIP Theft & Damage Waiver," Enhanced VIP Theft & Damage Waiver," and "Supplemental Liability Insurance." Both offer and acceptance, however, is required to establish the consent necessary for a contract. *Modern Machinery v. Flathead County*, 656 P.2d 206, 209 (Mont. 1982). And there is no claim or evidence that ALCES accepted the offer for $1 million in accidental death coverage for the participants or any of the other optional coverages. Accordingly, there was no contract between ALCES and Eaglerider

for $1 million in accidental death coverage for tour participants.

But as noted, the Estate argues Erickson accepted the $1 million in PAI Coverage when he initialed the PAI Coverage in the "Insurance & Damage Waiver Addendum." The Estate, however, does not explain how David Erickson could have accepted an offer that was never presented to him. More importantly, the document that Erickson initialed said that "[b]y initialing, you accept PAI/PEC at the rate shown, and upon the terms and conditions of the summary of coverage in the PAI/PEC brochure, a copy of which you acknowledge has been received by you." The PAI/PEC brochure described a $100,000 accidental death benefit.

Further, the "Insurance" provision of the Agreement between EagleRider and ALCES provides that "All insurance coverage and waivers are subject to the express terms and conditions of the rental contract …" Although there is no document entitled "rental contract" in the record, EagleRider claims the "Insurance & Damage Waiver Addendum" is the "rental contract." In any event, the "Insurance & Damage Waiver Addendum" is at least a component of the rental contract and, as noted above, it provides that PAI Coverage is upon the "terms and conditions of the summary of coverages in the PAI/PEC brochure …" Again the PAI/PEC brochure unambiguously describes an $100,000 accidental death benefit.

The Estate argues, in a footnote, that the Court should not consider the PAI/PEC brochure because it questions its authenticity, citing *Burgess v, Premier Corp.,* which held that a court does not abuse its discretion in excluding from evidence documents of questionable authenticity, where it also allows the witness to be thoroughly questioned about the document. 727 F.2d 826, 834 (9th Cir. 1984). But *Burgess* is easily distinguishable since the document in that case was an injunction that was not signed, had no findings of fact, and was from a court of questionable jurisdiction. *Id.*

Here, the PAI/PEC brochure is referenced in the "Insurance and Damage Waiver Addendum," a document that David Erickson initialed and that is attached as Exhibit B to the Second Amended Complaint. Moreover, EagleRider has authenticated the PAI/PEC brochure with the Declaration of Shawn Fecter, the EagleRider Tour Director for the motorcycle tour in which Erickson participated. Doc. 27-1. Fecter avers that the PAI/PEC brochure is the one referred to in the "Insurance and Damage Waiver Addendum" signed by Erickson on July 28, 2010 and made available to him. *Id*. at ¶ 4. Rule 56(c)(1)(A) Fed.R.Civ.P authorizes the use of declarations to support factual assertions, and also to genuinely dispute them, but the Estate has not done so.

Having concluded there was no contract for $1 million in PAI Coverage, there is no need to consider other issues raised by the parties. Summary judgment must be entered in EagleRider's favor.

## IV. ORDER

For those reasons, **IT IS HEREBY ORDERED** that EagleRider's Motion to Dismiss (doc. 14), converted to a Motion for Summary Judgment, is **GRANTED** and Erickson's Motion for Summary Judgment (doc. 17) is **DENIED.** EagleRider has paid the $100,000 in PAI Coverage and that is all it is required to do.

The Clerk of Court is directed to enter judgment accordingly.

Dated this 11th day of March, 2013.

*/s/ Richard F. Cebull*_____
Richard F. Cebull
United States District Judge